This suit emanates from a collision which occurred in the afternoon of January 20, 1944, involving a Buick and a Chevrolet automobile. The point of impact was about the center of the downtown-lake intersection of Washington Avenue and Jefferson Davis Parkway; the two thoroughfares are boulevards each having two lanes for vehicular traffic separated by a neutral ground. Washington Avenue runs in the direction from the river to the lake and is intersected at right angles by Jefferson Davis Parkway, which runs in an uptown-downtown direction. At each end of the neutral ground of Jefferson Davis Parkway, which is 185 feet wide, there is a light signal controlling the movement of traffic. The Buick was owned by Sam H. McGehee and at the time in question was being driven by his wife, who was accompanied by her sister, Mrs. Imogene Wilson Rose; the Chevrolet was being operated by Robert Tuemler.
This suit was filed jointly by Mr. and Mrs. McGehee, the former claiming the cost of medical attention to Mrs. McGehee and for the damages sustained by the Buick, and the latter claiming $3,000 for personal injuries. The suit is directed against Tuemler and his insurer, the New Amsterdam Casualty Company. The specific negligence charged is that Tuemler, speeding at an excessive rate without proper lookout, ran through a red light into the Buick. Defendants denied any negligence on the part of Tuemler; they allege that he had a favoring green light, and that the accident happened entirely because Mrs. McGehee entered the intersection on a red light and drove in front of Tuemler, who was in such close proximity that he was unable to avoid the collision. Defendants, in the alternative, charged Mrs. McGhee with contributory negligence. After a hearing on the merits there was judgment in the court below dismissing plaintiffs' suit, from which they have taken this appeal.
The sole question at issue is which of the drivers was favored by the green light. The testimony of Mrs. McGehee and Mrs. Rose is diametrically opposed to that of Tuemler.
Mrs. McGehee drove from her home with the intention of going to a store on Washington Avenue about one-half block beyond the place of the collision. To reach this destination it was necessary for her to proceed down Jefferson Davis Parkway, cross the uptown traffic lane and the neutral ground of Washington Avenue, *Page 861 
and then turn left into the downtown lane of Washington Avenue. Upon reaching Washington Avenue the traffic light there showed green and she made the crossing and left turn.
Mrs. McGehee testified that after turning she noticed that the light before her (controlling traffic moving back Washington Avenue) was red; that she continued onward along the neutral ground space of Jefferson Davis Parkway at slow speed, which she estimated to be about ten miles per hour, awaiting and anticipating a favorable change in the light; that the light changed to amber when she reached about midway along the neutral ground space; that she continued forward at the same slow speed and came "almost" to a stop at the downtown-lake intersection. She stated that thereupon the light changed from amber to green and she attempted the crossing, and that when she was a little more than one-half over, the Buick was violently run into by the Chevrolet which was moving at an excessive speed in an uptown direction on Jefferson Davis Parkway, the Buick being struck on its right side toward the rear. Mrs. Rose testified substantially to the same effect.
Tuemler is equally as emphatic that he entered the crossing on a green light. A summary of his testimony is that about one block before reaching Washington Avenue he was compelled to stop for several minutes because there was a train switching cars at a railroad crossing. After the train cleared, he started toward Washington Avenue and noticed that the light in his direction was red and amber preparatory to changing to green. That when he reached approximately 140 feet from Washington Avenue the light changed to green, and he first saw the Buick which had just straightened out on Washington Avenue after making its left turn. He claims that he next noticed the McGehee car when it was about eighty feet from the intersection, and he placed himself at this time about sixty-six feet from the intersection. He explained the estimation of sixty-six feet because of his location on a bridge 112 feet long spanning the drainage canal which parallels Washington Avenue, which he had to cross before reaching the intersection. Tuemler states that when he saw the McGehee car at this time it appeared to be pulling to its right and slowing down as though to stop at the intersection, and that believing it would stop he continued toward the intersection and entered it on the green light, going not more than twenty miles per hour; that when he made the entry the McGehee car shot out in front of him, and although he attempted to apply his brakes, and swerved to his left, he could not avoid running into it.
Tuemler also testified that while the McGehee car was moving along the neutral ground space before reaching the intersection, he also saw another automobile, which later proved to be driven by H. King, travelling on the far side of Washington Avenue going in the direction of the river, and that the King automobile came up to Jefferson Davis Parkway and stopped; that at the time he entered the intersection the King automobile and a Public Service bus were at a standstill on the opposite side of Washington Avenue presumably waiting for the light there to turn green in their favor.
King was summoned by both sides, but testified as a plaintiff witness. He knew little about the accident, except that he went to the assistance of the two ladies in the Buick. He states that he had stopped at the uptown-lake intersection in obedience to a red light signal, and that he was at a standstill when the collision occurred. He had not seen the cars before, and the noise of the impact attracted his attention.
We have carefully examined the record, and closely scrutinized the testimony. We must observe that Mrs. McGehee was somewhat vague in her statements as to the location of the Tuemler car when she first saw it, but she finally said that it was in the middle of the bridge when she was a car's length away from the intersection. Mrs. McGehee's testimony does not coincide with that of Mrs. Rose, who said she first noticed the Chevrolet when it was "past the middle of the bridge" and the McGehee car at that time was at about the middle of the intersection. *Page 862 
The petition alleges that Tuemler was driving at a high and dangerous speed in excess of the limit established by the local traffic ordinance, but we are unable to conclude that Tuemler was guilty of speeding. He testified that he was travelling at not more than twenty miles per hour; Mrs. McGehee estimated his speed to be about thirty miles per hour, and Mrs. Rose fixed it at "35 or more." We do not think that the ladies' testimony should prevail over Tuemler's, in view of the limited period during which they had the opportunity of observing the Chevrolet and of making the estimation. Located in the record is a photograph showing the damage on the right side of the Buick, and though the damage was considerable it would appear to us that if Tuemler had been travelling at the rate attributed to him, the Buick would have suffered more.
Counsel for plaintiffs concede, as they must, that the case is to turn on a question of fact, and that in such a situation the findings of the trial court must be given great weight. But, they argue, the verbal conflicts between the parties are to be resolved by other circumstances. In oral argument counsel argued that the testimony of Tuemler is too exact, especially as to time, distance and measurements, to ring true. We do not think so, particularly in view of the trial court's statement that he was impressed by the testimony. Tuemler, some time after the accident, visited the scene and made measurements of the various points, and drew a comprehensive sketch of the locale, and we can conceive of no inference which should be drawn from this that would taint his evidence with insincerity or untruth.
In his reasons for judgment dictated into the record by the trial judge, there is contained this observation: "* * * The preponderance of the evidence does not establish in my mind that the light was red against Mr. Tuemler; the evidence seems to bear out more his statement that the light was green. * * *"
Applicable to this appeal is the well recognized doctrine that where only an issue of fact is presented to an appellate court, and the testimony is irreconcilably conflicting and the credibility of witnesses must be passed upon, the conclusion of the trial judge should not be disturbed unless it is clearly erroneous.
We fail to find manifest error in the judgment appealed from, and it will be affirmed.
Affirmed.